IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00055-LTB-KLM (Consolidated with 08-cv-00056-LTB-KLM; 08-cv-00473-LTB-KLM; and 08-cv-00474-LTB-KLM)

RCL PROPERTIES, INC.,
KOZAD PROPERTIES, LTD.,
GLENHILLS RANCH, LTD.,
AMY HILL KOZELSKY,
BOBBY F. HILL, and
DOROTHY A. HILL,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiffs' **Motion to Compel** [Docket No. 34; Filed August 4, 2008] (the "Motion"). Defendant filed a Response on October 27, 2008 [Docket No. 57], and Plaintiffs filed a Reply on November 18, 2008 [Docket No. 63]. The Court set the Motion for hearing on December 1, 2008 [Docket No. 61]. In advance of the hearing, the parties agreed to limit their dispute significantly from the dispute that existed at the time the Motion was filed. The dispute has been narrowed to four document requests which seek documents and data underlying or related to a study created by the Internal Revenue Service ("IRS") identified as the "matrix" (Requests for Production 2, 12, 15, and 22 [Docket No. 35]).

    Plaintiffs dispute the value of their allowable deductions for conservation easements derived by the IRS via the matrix and bring this action to settle their tax liability pursuant

to the Tax Equity and Fiscal Responsibility Act, 26 U.S.C. § 6226. Specifically, Plaintiffs contend that the Final Partnership Administrative Adjustments ("FPAA") imposed by the IRS, which largely disallowed Plaintiffs' claimed easement deductions, were erroneous. "The matrix is a compilation of valuation data on thirty-five (35) sales of real property subject to conservation easements located throughout the State of Colorado. . . . The matrix is largely a body of factual information with certain assumptions, analysis, and conclusions reached by the [IRS] concerning the effect of a conservation easement on value." *Reply* [#63] at 1-2. The matrix is important, Plaintiffs argue, because it reflects information gathered and used by the IRS, in part, to value the charitable contributions for conservation easement deductions that Plaintiffs are entitled to take on property they own.

The IRS based its FPAA determinations on documents and data contained in the matrix. Defendant has already produced to Plaintiffs the matrix graph (the IRS's conclusions) and excerpts from the matrix (documents and data relating to seven of the thirty-five properties which the IRS found to be comparable to the properties at issue). *Reply* [#63] at 2. Plaintiffs argue that they need the entire matrix (all documents and data relating to the thirty-five properties) <u>and</u> the identity of approximately two hundred additional properties encumbered by easements that the IRS rejected for inclusion in the matrix. *Id.* at 15. Plaintiffs contend that this discovery will enable them to challenge the IRS's FPAA determinations. Specifically, they argue that the matrix and identity of the additional properties would reveal the analysis and methodology used by the IRS to determine the value of Plaintiffs' easements and enable Plaintiffs to bear their burden of rebutting the valuation made by the IRS and putting forth the appropriate valuation. *Id.* at 16-23.

At the December 1, 2008 Motion hearing, the parties discussed their respective

positions [Docket No. 65]. Defendant's argument against discovery is two fold: (1) the information contained in the documents and data is not relevant; and (2) the documents are protected from discovery by 26 U.S.C. § 6103 which prohibits disclosure of return information. Plaintiffs assert contrary arguments to both contentions, and also allege that it would not be possible for them to compile the information contained in the documents on their own. *See also Reply* [#63] at 10-11. While Plaintiffs contend that much of the information came from public documents, it took five IRS employees more than one year to compile, organize, review, and analyze all of the documents that went into creating the matrix and matrix graph. *Id.* at 7, 10-11.

### A. Relevance

The standard for relevance in the discovery context is broad and production should be allowed for any documents or information "having any tendency to make the existence of any fact that is a consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." (citations omitted)). In addition, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In its Response, Defendant generally argued that the majority of "the information sought has no relevance to the resolution of the value of the conservation easements, and would not lead to the discovery of admissible evidence" on the issue of "Plaintiffs' tax

3

liability for the years at issue." *Response* [#57] at 1.

> [T]he issue in this case is neither whether the engineer, revenue agent, or anyone else at the IRS correctly ascertained the facts, nor whether the IRS employee correctly applied the facts to the law. Rather the issue is whether the adjustments discussed in the FPAA are correct. . . . [T]hat determination will be based upon documents generated in the course of the transactions, as well as testimony by the participants and experts for one or both parties. It will not be based on the thought processes of IRS employees. . . .
>
> . . . .
>
> What plaintiffs seek, [in] essence, are the opinions and analysis of the IRS Revenue Officers and/or IRS Engineers who have worked these cases. . . . [T]his information is considered irrelevant even in a proceeding involving the taxpayer involved in the controversy in litigation.

*Response* [#57] at 6, 11. At the Motion hearing, Defendant further argued that the burden of proof Plaintiffs face at trial does not necessitate discovery of this information. Specifically, Defendant contends that because the trial court reviews *de novo* whether the FPAA was correct, documents and data underlying the conclusions of the IRS agents, rather than Defendant's testifying experts, is not relevant to that determination.

Plaintiffs contend that despite the trial court's *de novo* review, they possess the burden of proof at trial. *See Beresford v. United States*, 123 F.R.D. 232, 233 (E.D. Mich. 1988). First, there is a presumption of correctness given to the FPAA. *See id.* (noting that the IRS's assessment "is presumed correct until plaintiff shows otherwise"). Plaintiffs argue that possession of the documents and information they seek would allow them to rebut the presumption of correctness afforded to the IRS's FPAA determination. Second, Plaintiffs must not only rebut the presumption of correctness by providing *prima facie* evidence that the FPAA was incorrect, but they also bear the burden of proving the correct assessment amount. *See Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 387 (5th Cir. 1995); *Portillo v.*

4

*Comm'r*, 932 F.2d 1128, 1133 (5th Cir. 1991). Plaintiffs argue that the matrix documents and data and identity of additional properties are necessary to satisfy both burdens.

Plaintiffs' argument is summarized as follows:

> Valuation is about opinion as to fact, and in order for Plaintiffs to adequately defend the audit, they must meet a burden of proof showing that the determination made by the [IRS] was incorrect. That determination reflected in the [IRS's] report relies upon the matrix, which is factual in nature. Obviously, matters of fact are admissible at trial, whereas opinions as to applicable law are not. Plaintiffs seek to compel discovery only of factual matters, not legal analysis or policy matters.
>
> . . . .
>
> . . . The matrix and the specific valuation are inextricably intertwined. Plaintiffs must rebut the presumption of correctness that arises from the issuance of the FPAA which, in turn, will require Plaintiffs to distinguish the valuations made in the Valuation Report (including the data relied upon by the matrix). In order to disprove the conclusion stated in the matrix, the underlying factual information must be available to Plaintiffs.

*Reply* [#63] at 14, 17.

Plaintiffs further argue that "the opinion of fact itself is the question to be determined. . . . This is not about policy or law; it is about value." *Id.* at 23. Although the FPAA carries a presumption of correctness, and Defendant argues that there is nothing inherent in the burden of proof at trial to require information regarding how the underlying FPAA was derived, the Court notes that the presumption of correctness "does not serve to excuse [Defendant] . . . from providing some factual foundation for its assessments." *Portillo*, 932 F.2d at 1133. While Defendant has already provided documents and data related to the seven matrix properties that IRS agents deemed comparable, Plaintiffs simply request the information excluded from the valuation analysis by the IRS both to demonstrate that the IRS valuation was not correct and to support their own argument regarding valuation.

5

Further, by producing at least some documents and data from the matrix and matrix graph, it appears that Defendant concedes that at least a portion of this underlying material is relevant. It is not enough for Defendant to aver that it does not plan to use other matrix information at trial or to provide such information to its experts, because the IRS "has already received the advantage of [having all the] information" available to it when it made its assessment. *See Beresford*, 123 F.R.D. at 233. Plaintiffs should be in the same position to bear their burden at trial.[1]

The Court finds that information considered by the IRS – the seven comparable properties – <u>and</u> information rejected by the IRS – the twenty-eight other properties reflected in the matrix and the two hundred additional properties rejected for inclusion in the matrix – are relevant to Plaintiffs' burden of proof in this litigation. *See id.* at 235. It may be true that the latter documents and information have marginal relevance given the trial court's *de novo* review, i.e., they may not be directly relevant to the trial court's determination given that the court will not consider the rationale underlying the IRS's opinion. *See, e.g.*, *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) (recognizing that the basis for the IRS's conclusions is of no consequence to the trial court's *de novo* review); *Pierson v. United States*, 428 F. Supp. 384, 390 (D. Del. 1977) (same). However, I cannot conclude that the discovery Plaintiffs seek has no possible relevance or could not aid Plaintiffs in meeting their burden of proof by leading to the discovery of other admissible evidence.

B.   **Discovery Protection Pursuant to § 6103**

---

[1] Although Defendant contended at the hearing that all that is required for Plaintiffs to rebut the FPAA is an expert report reaching a contrary conclusion, it has cited no legal support that Plaintiffs' burden is so easily overcome.

6

26 U.S.C. § 6103 protects certain taxpayer information – taxpayer "return[s] and return information" – from unnecessary disclosure. Return information is broadly defined as anything that contains the identity of a taxpayer, "the nature and source of their income," receipts, deductions, tax liability, assets, tax payments, fines, forfeitures, etc. 26 U.S.C. § 6103(b)(2)(A). "[B]ut such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." *Id.* § 6103(b)(2). If a document or information is considered "return information," it may nevertheless be subject to discovery if it is directly related to resolution of a dispute at issue in a legal proceeding. 26 U.S.C. § 6103(h)(4)(B).

In its Response, prior to the issues being narrowed, Defendant argued that "much, if not most of the information at issue was obtained through IRS summonses in the names of unrelated taxpayers." *Response* [#57] at 10. However, Plaintiffs contend that the majority of the documents came from sources independent of the individual taxpayer. *Reply* [#63] at 7, 20 ("There has been no evidence that a tax return of any taxpayer who donated an easement provided any information whatsoever which was used to prepare the matrix valuation study."). Plaintiffs' contention is not contradicted by the declaration of IRS engineer Kerry Packard who indicated that "the vast majority of this information is from public record, and that the summonses were "issued to several Colorado land trusts." *Declaration of Kerry L. Packard* [#57-2] at 2. Further, "while the identification of the property may have come from a land trust, the factual documents appear only to be real estate records from the [clerk and recorder's] office, and the analysis performed by the [IRS]." *Reply* [#63] at 20. As such, Defendant's contention stands in direct contrast to Plaintiffs' contention that the documents they seek were derived from sources other than

7

individual taxpayer returns.

From a review of the parties' pleadings and arguments, I find that it is unclear what portions of the disputed documents Defendant contends are protected from disclosure as return information. To the extent that some of the documents were derived from IRS summonses, these summonses appear to have been issued to land trusts, not to individual taxpayers, and sought only the identity of a property, not return information. *See Reply* [#63] at 7, 20. Further, it is unclear whether the mere identification of the other two hundred easement-encumbered properties would fall into a protected category.

The nonmoving party has the burden to substantiate its objection to discovery pursuant to resolution of a motion to compel. *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003). "When a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Sonninno v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004). Defendant has failed to adequately support its contention that the documents and data contained in the matrix were derived from taxpayer returns or should otherwise be classified as return information. Further, the Court notes that if the matrix contained protected return information, Defendant would have undoubtedly objected to producing the matrix graph, documents and data related to seven of the thirty-five properties that make up the matrix. In addition, disclosing the identity of the two hundred additional properties not selected for inclusion in the matrix likewise would not appear to reveal any private return information.

Regardless of whether the remaining documents and information are protected return information, I find that Plaintiffs have a articulated a necessity for disclosure of this information to satisfy their burden of proof, such that the "directly related" exception pursuant to § 6103(h)(4)(B) is implicated. This exception applies "if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding." 26 U.S.C. § 6103(h)(4)(B). In such a case, even protected return information may be discoverable. As in *Beresford*, where the Court found the documents and data underlying the IRS's assessment were necessary for plaintiff to rebut the presumption of correctness, I agree that the matrix and identity of two hundred additional properties are directly related to Plaintiffs' "ability to challenge the valuation in this proceeding." *Beresford*, 123 F.R.D. at 235. Although Defendant contends that the IRS only used the documents and data related to the seven comparable properties, presumably there was a reason that the IRS rejected for comparison the remaining twenty-eight matrix properties and the other two hundred easement-encumbered properties. As such, while the latter information may not ultimately have been relied upon, the IRS had the advantage of this information in determining which properties were comparable and in reaching its valuation of the disputed easements. *See id.* at 233. Plaintiffs should be in the same position to meet their burden.

> Further, such disclosure is consistent with [§ 6103's] scheme of permitting disclosure to only those persons who have a legitimate need to know and can be made under a protective order limiting the disclosure for the purposes of this litigation. Any use of the information at trial could be made in redacted form to code the identity[, if any], of other taxpayers.

*Id.* at 235. Accordingly,

IT IS HEREBY **ORDERED** that the Motion is **GRANTED**. The information ordered

9

disclosed herein shall only be used for purposes of this litigation.

IT IS FURTHER **ORDERED** that the parties shall file a proposed stipulated protective order detailing the agreed-upon treatment of the material produced as a result of this discovery Order on or before **December 31, 2008**. To the extent that the parties cannot agree on the terms of the protective order, on or before the same date, Plaintiffs shall file a motion for protective order setting forth the parties' respective positions.

IT IS FURTHER **ORDERED** that Defendant shall produce the documents, data, and information responsive to Requests for Production 2, 12, 15, and 22 (which the parties concede seek production of the documents and data relating to the remaining twenty-eight properties at issue in the matrix and the identity of the approximately two hundred other easement-encumbered properties only) within **fourteen (14) calendar days** of entry of the protective order.

Dated: December 11, 2008

BY THE COURT:

s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge